UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

WOOLLY THREADS, L.L.C.

VERSUS

GLASS-U, L.L.C., NEU RETAIL, L.L.C., and
DANIEL FINE

CIVIL ACTION

19-626-SDD-RLB

RULING

Before the Court is the *Motion to Dismiss*[1] filed by Defendants Glass-U, LLC (d/b/a Neu) ("Glass-U"), NEU Retail, LLC ("Neu Retail"), and Daniel Fine (collectively "Defendants"). Plaintiff Woolly Threads, LLC ("Woolly") filed an *Opposition*,[2] to which Defendants filed a *Reply*.[3] For the following reasons, the Court shall GRANT the *Motion*, with leave to amend[4]

I. **FACTUAL BACKGROUND**

Plaintiff alleges the following facts which, for purposes of this motion, are taken as true. Woolly is a limited liability company organized under the laws of Louisiana.[5] Glass-U and Neu Retail are limited liability companies organized under the laws of Delaware with their principal place of business in Philadelphia, Pennsylvania.[6] Daniel Fine is the sole member of both Glass-U and Neu Retail.[7]

---

[1] Rec. Doc. No. 67.
[2] Rec. Doc. No. 71.
[3] Rec. Doc. No. 72.
[4] Rec. Doc. No. 67.
[5] Rec. Doc. No. 64, p. 1.
[6] *Id.*, p. 1-2.
[7] *Id.*

Woolly is in the business of producing and selling cotton/poly-blend pull-over sweaters.[8] In 2017, Woolly and Glass-U entered into a licensing agreement (the "Agreement"), which granted Glass-U an exclusive, nonassignable license to manufacture and distribute Woolly's licensed products in exchange for annual minimum and earned royalty payments.[9] Glass-U also agreed not to sell certain products for less than $24 and to refrain from selling certain designs.[10] Woolly alleges that Glass-U subsequently breached those conditions and failed to pay all amounts owed to Woolly under the Agreement.[11]

On September 19, 2019, Woolly sued Glass-U for damages and for declaratory relief in the form of a declaratory judgment to clarify the rights and obligations of the parties.[12] Woolly added Neu Retail as a Defendant in its *First Amended Complaint* and, thereafter, the parties engaged in discovery.[13]

On February 19, 2021, the parties filed a Joint Notice of Settlement advising that they had reached a settlement and had executed a written settlement agreement ("Settlement Agreement"), in which Glass-U and Neu Retail agreed to pay Woolly a sum of money.[14] Woolly alleges that Glass-U and Neu Retail subsequently failed to pay the money owed by the applicable deadlines in the Settlement Agreement.[15]

On March 17, 2022, Woolly filed its *Second Amended Complaint* against Glass-U and Neu Retail for breach of the Settlement Agreement.[16] Then, on April 14, 2022, Woolly

---

[8] *Id.*, p. 3.
[9] *Id.*, p. 4.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] Rec. Doc. No. 41.
[15] Rec. Doc. No. 64, p. 5.
[16] Rec. Doc. No. 52.

added Fine as a defendant in its *Third Amended Complaint*, the most recent complaint of record, alleging that Glass-U and Neu Retail "are mere 'alter egos' of their principal, Fine, and their corporate formalities and separateness should be disregarded for purposes of this action."[17] In support of this claim, Woolly alleges that:

- "As it relates to the Agreement, Woolly has only communicated and transacted with Neu Retail via Daniel Fine."[18]

- "Neu Retail and Neu are used interchangeably by Daniel Fine in order to conduct business with Woolly."[19]

- "Daniel Fine acted through Neu and Neu Retail to practice artifice and deceit upon Woolly."[20]

- "Upon information and belief, and as discovery will demonstrate, Daniel Fine, as a manager, CEO, founder, and dominant owner of Neu and Neu Retail, has commingled funds and property and/or that of other entities in which he holds a controlling interest with those of Neu and Neu Retail which will be demonstrated."[21]

- "As the sole member and manager of Neu and Neu Retail, Daniel Fine disregarded the status of Neu Retail and Neu as separate and unique entities to such an extent that Neu and Neu Retail have ceased to become distinguishable from Daniel Fine."[22]

- "Defendants' misuse of corporate formalities justifies the treatment of Defendants

---

[17] Rec. Doc. No. 64, p. 8.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

as alter egos of each other."[23]

Through the instant *Motion*, Defendants seek dismissal of Woolly's claims against Fine, arguing that Plaintiff's veil-piercing theory relies on conclusory allegations that lack the factual support necessary to survive a 12(b)(6) motion to dismiss.

## II.    LAW

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[24] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[25] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[26]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[27] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[28] However, "[a] claim has facial plausibility when the

---

[23] *Id.*
[24] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[25] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equity, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[26] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[27] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").

plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[30] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[31] "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[32]

### III.  ANALYSIS

Defendants argue that Woolly's claim against Fine should be dismissed because Plaintiff's veil-piercing theory relies on conclusory allegations that "are nothing more than restatements of the elements of its cause of action, often couched in the terms of 'information and belief' pleading."[33] Defendants contend that Fine was not a party to the Settlement Agreement and, although Woolly may regret that it did not require Fine to personally guarantee the performance of the Settlement Agreement, Woolly should not be allowed "to rewrite history and pull Mr. Fine into an agreement that does not involve him in his individual capacity."[34]

Woolly contends that, "[a]s the sole owner and controller of the corporate defendants, Defendant Fine entered into the settlement agreement . . . on behalf of those entities with apparent knowledge of their inability to adhere to their financial obligations."[35]

---

[29] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).
[30] *Id.*
[31] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[32] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[33] Rec. Doc. No. 72, p. 1.
[34] *Id.*, p. 2.
[35] Rec. Doc. No. 71, p. 1.

Woolly asserts that dismissal at this stage would be inappropriate because it has stated a claim for relief and discovery is necessary to discover "the non-public information in the Defendant's possession that Defendant Fine is currently hiding behind."[36]

Because Glass-U and Neu Retail are incorporated in the State of Delaware, the parties agree that Delaware law governs Woolly's veil-piercing claim.[37] Under Delaware law, "[veil piercing is a tough thing to plead and tougher thing to get."[38] To state a veil-piercing claim, a plaintiff must plead facts supporting an inference that an individual or parent company has created a sham entity designed to defraud investors and creditors. To guide this inquiry, a court may consider: (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder.[39] Courts have also required a veil-piercing claim to demonstrate "an overall element of injustice or unfairness."[40]

Woolly argues that the facts of this case are substantially similar to *David v. Mast*.[41] There, the defendant, who was the sole shareholder of his company, had his company enter into a contract with the plaintiffs when he knew the corporate entity had "no funds, assets or resources" to honor its contractual undertaking.[42] The Delaware Court of

---

[36] *Id.*, p. 1-2.
[37] "[T]he law of the state of incorporation applies in determining whether it is appropriate to pierce the corporate veil." *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 646-47 (5th Cir. 2002).
[38] *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022).
[39] *Doberstein v. G-P Indus.*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015).
[40] *Id.*
[41] Rec. Doc. No. 71, p. 9 (citing 1999 WL 135244 (Del. Ch. Mar. 2, 1999)).
[42] *Mast,* 1999 WL 135244, at *1.

Chancery[43] held that the company's veil could be pierced because the "misuse of the corporate form constitutes a public wrong justifying disregard of the corporate entity."[44] Woolly contends that here, like in *Mast*, "one singular person is improperly using an undercapitalized company to ratchet debt for his own personal benefit, all the while knowing that the worthless entity has no ability or intention of ever paying the debt."[45]

This reasoning may be intrinsically sound; however, there is one major problem with this argument. "It is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss."[46] Nowhere in its *Third Amended Complaint* does Woolly expressly contend that the Corporate Defendants were undercapitalized at the time of the Settlement Agreement or that Fine had his companies enter into the Settlement Agreement while knowing that the corporate entities had "no funds, assets, or resources to honor" the agreement.[47] These allegations appear in Woolly's *Opposition*, not its *Complaint*.[48] And although the *Complaint* alleges that Woolly failed to observe corporate formalities, this is hardly sufficient to demonstrate "an overall element of injustice or unfairness."[49] The *Complaint* is void of facts sufficient to support an inference that Fine "has created a sham entity designed to defraud investors and creditors."[50]

The *Complaint's* only indication of undercapitalization is the Corporate Defendants' failure to make any payment under the terms of the Settlement Agreement.[51] But this fact,

---

[43] The Delaware Court of Chancery is a court of equity. It is one of Delaware's three constitutional courts, along with the Supreme Court and Superior Court.
[44] *Id.* at *1.
[45] Rec. Doc. No. 71, p. 9.
[46] *In re Baker Hughes Sec. Litig.,* 136 F.Supp.2d 630, 646 (S.D.Tex.2001), *citing O'Brien v. Nat'l Prop. Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989).
[47] *See Mast,* 1999 WL 135244, at *2.
[48] Rec. Doc. No. 71, p. 9.
[49]
[50] *See Doberstein*, 2015 WL 6606484, at *4.
[51] *See* Rec. Doc. No. 64, p. 5.

by itself, does not lead to the reasonable inference that Fine siphoned funds from the Corporate Defendants or kept them insolvent while racking up their corporate debt, all the while knowing that they could not repay the debt. Presumably, most corporate defendants in contract cases have failed to comply with some alleged financial obligation. If that fact alone could give rise to an inference of ill-purposed undercapitalization or insolvency, the pleading standard for veil-piercing claims would be drastically reduced. To be sure, Woolly does not have to produce the books of the Corporate Defendants to survive a 12(b)(6) motion to dismiss, but if Woolly believes that Fine knew of and contributed to the Corporate Defendants' inability to adhere to the Settlement Agreement, then Woolly should have pleaded as much in its *Complaint.*

The Court is mindful that Woolly has already amended its initial complaint three times to add Neu Retail and Fine as defendants and to enforce the Settlement Agreement. However, Woolly has not previously amended its pleadings due to a 12(b)(6) deficiency. Thus, the Court will grant Woolly leave to file an *Amended Complaint* within 30 days of this Ruling.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' *Motion to Dismiss*[52] is hereby **GRANTED** and Plaintiff's claims **DISMISSED** without prejudice. Plaintiff is granted leave to file an *Amended Complaint* within 30 days of the date of this ruling.

Signed in Baton Rouge, Louisiana, this day, November 18, 2022.

*Shelly D. Dick*
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[52] Rec. Doc. No. 67.